Mr. Justice MacArtuur
delivered the opinion of the court:
This is an appeal from the decision of the Commissioner of Patents rejecting one of the claims accompanying the application of Joseph L. Pennock for a patent filed October 23, 1871] The invention relates to an improvement in conveying the heavy heated masses of iron from the bed of a furnace to the rolls of a rolling-mill.
The meaus employed in this process consist. of a power-driven hauling mechanism with a chain, one end of which is secured to a shaft parallel with the rolls, and turned by the machinery which turned the rolls; the other end of the chain is furnished with grappliug-hooks for seizing the pile before it leaves the furnace, and between the latter and the rolls there is a swinging crane from which a platform is suspended. When it is required to remove the heated pile to the rolls the hooks attached to the chain are first adjusted over the pile nearest the doorway of the furnace, and then by starting the shaft the chain is caused to draw the pile on to the platform of the crane, which is swung around, and the fagot at once presented to the rolls. The plan and details of the combination are shown in a drawing filed with the specifications. The claim which has been rejected reads as follows:
“In a rolling-mill, the revolving shaft with its drum-chain and grapple, or any equivalent power-driven hauling mechanism, in combination with a crane, arranged and operating in connection with the said mechanism to receive the fagot from the same and deliver it at the rolls.”
*536 Prior to this invention the manner in which the fagot was transferred was by means of a track or carriage which received it when withdrawn from the furnace, and it was then dragged by ten or a dozen men, stationed on each side, to the rolls. The number of men necessary for this purpose would of course depend upon the magnitude of the manufacture. Accompanying the argument of counsel for appellant is a picture illustrating the rolling of armor-plates at the Atlas Works in Sheffield, England, in which a body of forty men are seen dragging the loaded truck toward the rolls; and at the establishment of C. E. Penqock & Co., of which the patentee is one of the partners, it required the assistance of from ten to fifteen men to perform the same operation. But by substituting the crane and platform in place of the truck, two men can easily accomplish the same thing. Perhaps few devices in modern times have introduced a greater saving of time and labor into any branch of the manufacture of metals, and an invention possessing such a principle of economy will undoubtedly supersede, at no distant day, the laborious method of conveying heated masses of iron upon . trucks by the unaided strength of men. I assume that the improvement introduces this advantage to economize, as the proofs appear to be clear, and are neither denied nor impeached. Now, it is a familiar principle that where known elements are combined in a new form, so as to produce a new and useful result, it is an invention, and as such is entitled to the protection of the patent-law. Judged of by this test, can there be any doubt of the patentable merit of this combination? The hard work of a large number of attendants is dispensed with by a cheaper and better power than manual labor. A substantial effect of this kind is peculiarly within the encouragement and favor of the law.
In his written opinion the learned Commissioner remarks that the “applicant has substituted a crane for the truck in this case. But, as is well known, cranes are in common use for conveying heated piles to be forged and rolled;” and again he says, “ I have no doubt the combination is legitimate, so far as the co-operation of the parts is concerned; but it only required the application of mechanical skill to produce it in the present state of the art.”
*537 There is no doubt but that the crane and platform used by the patentee instead of the truck constitutes that part of the combination which produces the beneficial result. And it is equally true that a crane was. well known long before; but there is no proof or reference to show that it had ever been used as an agent for swinging the fagot in a rolling-mill, in combination with a power-driven hauling mechanism and a suspended platform, until Pennock adapted it to that purpose. In the light of the proofs the Commissioner is manifestly mistaken in asserting its prior use in this connection. It had been employed in iron manufactories and even in rolling-mills, but in a different way and for a different purpose. The use of a crane to convey heated iron to trip-hammers is mentioned, and is, indeed suggestive, and yet the hint had never exercised a single mind among the hundreds of ingenious artisans who fill the workshops of Europe and America. In view of this consideration it would seem impossible to say that the invention was not original, or that it only required the ordinary skill of a mechanic to produce it. Inventions, like all other matters of inquiry, are subject to be judged of by practical results. A combination is not less an invention, although all the parts are well known, if the effect is a new or a better result, and it is the highest evidence possible of a patentable combination that it produces an article with a great economy of time and labor. In Furbush vs. Cook, (2 Fisher, 672,) Judge Curtis remarked:
“And it is a decisive evidence, though not the only evidence, that a new mode of operation has been introduced if the practical effect of the new combination is either a new effect or a materially better effect, or as good an effect more economically attained by means of the change made. A new improved or more economical effect attributable to the change made by the patentee in the mode of operating existing machinery proves that the change has introduced a new mode of operation which is the subject-matter of a patent .; and when this is ascertained, it is not a legitimate subject of inquiry at what cost to the patentee it was made, nor does the validity of the patent depend on an opinion formed after the event respecting the ease or difficulty of attaining it.”
*538 The utility of this combination is brought within this principle of patent-law by the affidavit of James D. Stott, which is made an exhibit to the application. In it he says :
“ So much difficulty was experienced in removing the heavy heated piles from the furnace to the rolls that Mr. JL. Pennock adopted mechanical appliances for effecting this purpose. These consisted of power-driven hauling mechanism for seizing the pile in the furnace and dragging therefrom on to the platform of a crane, which was swung around so as to deliver the pile to the rolls. This mechanism worked admirably and is still in use. Prior to this invention it was the practice to drag the pile from the furnace on to a truck, and then to wheel the truck with its load to the rolls. This mode of removing a heavy pile to the rolls was a most laborious undertaking, and required the assistance of from ten to fifteen men. The invention of Mr. Pennock, however, rendered the operation a very easy one, but t»wo men being required to operate it, and to perform the same duty which required ten to fifteen men to accomplish prior to the use of the invention. I have no interest in this application for patent.”
From this uncontradicted statement, it is clear that this is one of the many instances in which the application of machinery to a useful art has resulted in an extraordinary economy of labor. A machine is made to do the hard work of a dozen men with but little trouble or expense, and the references entirely fail to prove that the combination which accomplishes this result ever existed before. If it required but the ordinary skill of a mechanic to make the discovery, it is certainly wonderful that so great a utility had not previously been introduced. Furnaces, steam engines, turning-rollers, trip-hammers, cranes, and hauling mechanism, were familiar powers to all persons employed in these workshops, and yet none had conceived the happy thought of causing machinery to perforin the drudgery of the men who dragged the truck. This was the conception of Pennock. He took the well-known crane which everybody had neglected and adapted it with a suspended platform to this new function. Even were it true that this required but a small amount of invention, that fact would be no valid objection to granting *539 a patent when the advantages are confessedly so great. As pertinent to this view I cite the lan gauge of the author of the article on patents in the Encyclopaedia Britannica, as follows:
“ A small amount of invention is indeed sufficient to support a patent where the utility to be derived from the result is great. A small step in advance, a slight deviation from known processes, may have been apparently brought about by the exercise of little ingenuity; but if the improvement be manifest, either as saving time or labor, a patent in respect of it will stand. The mere omission of a step from some commonly-practiced process has been held sufficient to support a patent for a new method of manufacture; and how often do we see what appears to be a very trifling degree of novelty attended with very advantageous consequences, sometimes resulting in the entire revolution of a manufacture, or in a lowering of price appreciable in every pound of an article extensively used by the public.”
Now, if the testimony in this case is credible, the improvement is productive of a result in the highest degree useful. The swing of the crane will do more than the drudgery of a dozen laborers; and in an establishment as large as that at Sheffield, England, two men will accomplish more in conducting the enormous, masses of red-hot iron to the rolls than twenty, or perhaps even forty, now do, by dragging it there.
Whether the inventive faculty has been exercised, is mostly a question of evidence, and is always to be considered in reference to the condition of the art, and the results accomplished, and where the combination is confessedly new and the benefit great, the presumptionis strongly in its favor. It is not always safe to consider that there has been no invention because it appears obvious and simple, for simplicity is often the chief merit of a patent. Nor is it material whether Mr. Pennock spent much or little time in elaborating his enterprise. If the thought was original and can be employed with substantial advantage, it becomes a meritorious invention within the meaning of the patent-law.
It will be observed, as already stated, that the crane, with its platform so adjusted in arrangement with the hauling; mechanism as to co-operate in transferring the fagot, is not. *540 only new, but it constitutes the object of the invention and accomplishes the desired purpose. This combination is legitimately covered by the first claim, and a majority of the court are of opinion that the appellant is entitled to have it included within the protection of his patent.
The decision of the Oommissioher is reversed.